UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MERCY L. REYES,<br><br>         Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner,<br>Social Security Administration,<br><br>         Defendant. | Case No.: C 05-1828 PVT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE FOR FURTHER FINDINGS** |

On December 8, 2005, pursuant to the Procedural Order for Social Security Review Actions, Plaintiff Mercy L. Reyes ("Reyes") filed a motion for summary judgment.[1] Defendant, the Commissioner of the Social Security Administration ("Commissioner"), opposed the motion and filed a cross-motion for summary judgment. Both parties have consented to proceed before a United States Magistrate Judge. Based on the administrative record and the moving, opposition and reply briefs presented,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED and the case is REMANDED for further findings.

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

## I. FACTUAL AND PROCEDURAL BACKGROUND

Reyes is a 62 year-old female (DOB 3/20/44), who was 57 years old at the alleged onset date of disability. She attended school through the tenth grade, and has no further formal education. Her past relevant work experience consists of employment as a data entry clerk and product controller.

Reyes testified she underwent surgery in November, 2001 for urinary incontinence, and that she returned to work for about a month after the surgery. (Tr.[2] 201.) There are no medical records in the administrative record from that surgery.

On January 7, 2002, a complete urinalysis was obtained. Seven of the results were outside of the normal range. A notation on the lab results states "given Septra is she taking the right meds?" Another notation state "finish Septra" and indicates that a different medicine was prescribed. (Tr. 158-59.) The administrative record contains no medical records for any doctor's visit or consultation corresponding to this lab work.

Another urinalysis was obtained on January 28, 2002. Of the seven results that were previously outside of the normal range, all but two had returned to the normal range, and the remaining two had improved from "many" to "moderate."

On February 2, 2002, Plaintiff was laid off due to company downsizing. (Tr. 53.)

Reyes was seen at the San Jose Medical Group/Good Samaritan Medical Group ("SJMG") on April 11, 2002. She presented with symptoms of dysuria, chills, urgency, frequency and back pain. A progress note indicates mild suprapubic tenderness and mild tenderness to both flanks. She was diagnosed as having a urinary tract infection and was given the medication Cipro. (Tr. 143.)

On April 17, 2002, Reyes again presented to SJMG still reporting mild dysuria, urgency and chills. (Tr. 145.)

On January 7, 2003, Patrick E. Wherry, M.D. wrote a note stating that Reyes was under his care for interstitial cystitis, she had frequency of urination, and he did not feel she was capable of serving on a jury at that time. (Tr. 169.) There are no medical records from Dr. Wherry dated before January 7, 2003 in the administrative record.

---

[2] As used herein, "Tr." refers to the Administrative Transcript filed herein on August 9, 2005.

1	Michael Gray, P.A.–C. examined Reyes on February 11, 2003.  She presented with dysuria,
2	chills, and an urgent need to void.  (Tr. 116.)
3	On March 13, 2003, Reyes again visited SJMG with complaints of bladder problems.  A
4	"Nurse's Progress Note" states "no help with bladder urethral repair.  Has chronic incontinence."
5	(Tr. 138.)
6	On March 16, 2003, Reyes applied for Social Security disability benefits.  In the "Disability
7	Report Adult," she stated that the condition that limited her ability to work was incontinence.
8	(Tr. 53.)  She also stated she was "always in pain" and had constant urinary tract infections.  (Tr. 53.)
9	She stated she had become unable to work on February 2, 2002.  (Tr. 53.)  Where the form asks
10	"Why did you stop working?" Reyes wrote "layed [sic] off Company downsized – closed Dept.
11	transferred Dept to another state." (Tr. 53.)
12	On June 3, 2003, Lawrence Hwong, M.D. wrote a letter to the Department of Social Services
13	Disability and Adult Programs Division.  He stated that he first saw Reyes in his office on 4/28/03
14	with a history of urinary tract infection.  He noted that she was seen 2 more times and continued to
15	have bladder pain with urinary frequency every hour despite treatment with antibiotics.  He
16	mentioned that Reyes was scheduled to have a cystoscopy and hydrodilation of the bladder on 6/6/03
17	to rule out interstitial cystitis.  Finally, he commented that from a urologic standpoint Reyes did not
18	have any physical disability other than the fact she may need to use the restroom to urinate more
19	frequently than other workers.  (Tr. 92.)
20	On June 6, 2003, Dr. Hwong performed the scheduled cystoscopy and hydrodilation of the
21	bladder with instillation of Elmiron.  (Tr. 96.)  Prior to performing those procedures, Dr. Hwong
22	examined Reyes and noted that her general physical condition was good, and that she had a history
23	of urinary frequency and RLQ pain.  (Tr. 95.)  In his Procedure Report, Dr. Hwong cited significant
24	chronic interstitial cystitis as the postoperative diagnosis.  (Tr. 96.)
25	Michael Gray, P.A.–C. saw Reyes again on July 14, 2003 for a possible urinary tract
26	infection.  He noted her history of interstitial cystitis.  (Tr. 113.)
27	On August 6, 2003, the Social Security Administration denied Reyes' claim for disability
28	benefits.  (Tr. 20.)

On September 10, 2003, Dr. Wherry reviewed Reyes medical records and found that they were consistent with interstitial cystitis. He examined her and noted suprapubic pain. He prescribed a trial of Moldwin's cocktail and continuing Elmiron. (Tr. 104, 112, 167.)

On October 2, 2003, Reyes requested reconsideration of her disability claim. (Tr. 24.)

On October 27, 2003, Dr. Wherry ordered an urgent irrigation of the bladder. (Tr. 179.)

From September 10, 2003 through October 27, 2004, Reyes visited Dr. Wherry's office dozens of times for follow-up treatments. (Tr. 164-67, 170, 184-94.)

On December 13, 2003, Reyes underwent a colonoscopy. Kansara Rasik, M.D. found diverticulosis in both the descending and sigmoid colon.[3] (Tr. 162.)

Reyes failed to show up for a consultative examination that was scheduled for February 19, 2004, and did not respond to due process letters sent to her.[4] (Tr. 174.) There is no indication in the record that Reyes ever attempted to reschedule the examination.

On March 19, 2004, Reyes' claim was again denied on reconsideration. (Tr. 25.)

An April 20, 2004 progress notes appears to note suprapubic pain, with a hard to decipher notation that may indicate a decrease of 50%. (Tr. 191.)

On May 19, 2004, Reyes requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 33.) The hearing was held on October 20, 2004. On November 19, 2004, the ALJ rendered an unfavorable decision. (Tr. 9-17) The Appeals Council denied Reyes' Request for Review. (Tr. 4-6.) Consequently, the ALJ's decision became the final decision of the Commissioners.

**II.    LEGAL STANDARDS**

To qualify for disability benefits, a claimant must show that a medically determinable

---

[3] It is not clear why Reyes' includes information about this procedure in her brief. Reyes presents no evidence that diverticul*osis* is in any way related to her alleged pain. The record indicates this examination was routine "screening," and there is no indication in the record of any diverticul*itis*.

[4] When Reyes applied for disability benefits she signed an application form that expressly stated:

"I UNDERSTAND THAT I MAY BE REQUESTED BY THE STATE DISABILITY DETERMINATION SERVICES TO HAVE A CONSULTATIVE EXAMINATION AT THE EXPENSE OF THE SOCIAL SECURITY ADMINISTRATION AND THAT IF I DO NOT GO, MY CLAIM MAY BE DENIED." (Tr. 43.)

physical or mental impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to last for a continuous period of at least twelve months (or result in death). *See* 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process is used to determine whether a claimant is "disabled." *See* 20 C.F.R. § 404.1520. The first step is to consider whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the Commissioner proceeds to step two. The second step is to assess whether the claimant suffers from a "severe" impairment. If not, the claimant is not disabled. If so, the Commissioner proceeds to step three. The third step is to examine whether the claimant's impairment or combination of impairments meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1. If so, the claimant is automatically deemed disabled. If not, the Commissioner proceeds to step four. The fourth step is to determine whether the claimant is capable of performing her past relevant work. If so, she is not disabled. If not, the Commissioner proceeds to step five. Finally, the firth step is to determine whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy. If not, the claimant is disabled. The burden lies with the claimant to establish steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In step five, the burden shifts to the Commissioner. *Id*.

In reviewing a denial of Social Security disability benefits, courts will set aside an ALJ's decision only if that decision is based on legal error or the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tacket v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla" but "less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (citation omitted); *see also Desrosiers v. Secretary of Health & Human Serv.,* 846 F. 2d 573, 576 (9th Cir. 1988).

Mere presence of a disease or impairment is not enough. A claimant must show that her disease or impairment caused functional limitations that precluded her from engaging in any substantial gainful activity. *See Alexander v. Shalala*, 927 F.Supp. 785, 792 (D.N.J. 1995). Further, it is insufficient for a claimant to show he or she experienced short periods of severe impairment to

the point of disability.  To be entitled to benefits, the claimant must establish that the disabling severity of the impairment lasted, or could be expected to last, for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); *and see Taylor v. Heckler*, 576 F.Supp. 1172, 1177 (N.D. Cal. 1983) *aff'd* 765 F.2d 872, 875 (9th Cir. 1985).

While courts must look at the record as a whole, considering both evidence that supports and that undermines the ALJ's findings, it is the ALJ's function to resolve conflicts in the evidence.  *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992).  However, even if substantial evidence supports the ALJ's factual findings, the decision must nonetheless be set aside if the ALJ applied improper legal standards in reaching the decision.  See *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

When a claimant demonstrates the existence of a condition that would cause some degree of pain or dysfunction, the ALJ must articulate specific, convincing reasons for rejecting the claimant's subjective testimony regarding his pain and limitations.  *See, Fair v. Bowen*, 885 F.2d 597, 601-04 (9th Cir. 1989); *see also, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001).  An ALJ may not reject a claimant's statements regarding her limitations merely because they are not fully corroborated by objective evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 343-45 (9th Cir. 1991).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

If a claimant does not have good reason for failing or refusing to take part in an ordered consultative examination, the claimant may be found not disabled.  20 C.F.R. § 416.918(a). Examples of a "good reason" for failing to attend include being ill on the date of the examination, not receiving timely notice of the examination, receiving incorrect or incomplete information (including the chosen physician or scheduled time and place of the examination), and having a death or serious illness in the immediate family. 20 C.F.R. § 416.918(b).

Courts may not affirm the decision of an ALJ on grounds upon which the ALJ did not rely in reaching his decision.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

### III. DISCUSSION

Reyes argues the ALJ erred by: 1) failing to describe with sufficient specificity his conclusions regarding Reyes' residual functional capacity; 2) failing to ascertain the demands of Reyes' former work and to compare those demands with her present capacity; and 3) failing to make a proper credibility finding.

As discussed herein, the court agrees that the ALJ failed to specifically identify what evidence he found undermined Reyes' allegations of disabling pain. Assuming the ALJ can, upon remand, sufficiently articulate his reasons for finding that Reyes' allegations regarding her pain and related limitations are not credible, the court finds that the ALJ otherwise adequately described his conclusions regarding Reyes' residual functional capacity, and properly compared the demands of Reyes' former work with her present capacity.

### A. The ALJ Failed to Specifically Identify What Evidence He Found Undermined Reyes' Allegations of Disabling Pain

In his decision, the ALJ expressly rejected Reyes' allegations of disabling pain and limitation. However, he failed to adequately articulate the basis for his credibility findings, stating only that:

> "* * * * the undersigned has considered the claimant's allegations of disabling pain and limitation. However, after carefully considering all of the medical and documentary evidence, the undersigned finds that there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating and examining physicians, the level of restrictions on the claimant in the physician opinions of record, and the level of follow-up treatment (including diagnostic testing) ordered by the treating physicians. There is no record of consistent pain in the record; rather, the pain to interstitial cystitis is noted only once, on September 10, 2003, over a year ago.

> "* * * * the allegations by the claimant as to the intensity, persistence, and limiting effects of her symptoms are not well supported by probative evidence and are not wholly credible."

The ALJ adequately specified "disabling pain and limitation" as the allegation he found not to be credible. However, he failed to *specifically* identify what evidence he found undermined her credibility. Under Ninth Circuit precedent, the general reference to discrepancies between Reyes' assertions and "the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating and examining

ORDER, *page 7*

physicians, the level of restrictions on the claimant in the physician opinions of record, and the level of follow-up treatment (including diagnostic testing) ordered by the treating physicians," is insufficient.

Moreover, the ALJ applied an erroneous legal standard to his assessment of Reyes' pain. He stated that "[s]ubjective complaints are considered credible only to the extent that they are supported by the evidence of record." That standard is directly contrary to long-standing Ninth Circuit law. As noted above, the ALJ may not reject Reyes' testimony regarding her pain and related limitations merely because they are not fully corroborated by objective evidence. *See Bunnell*, 947 F.2d at 343-45. Instead he must articulate specific, convincing reasons for rejecting Reyes' pain allegations, and must specifically identify the evidence that he found undermined her credibility.

There is evidence in the record that the court believes *could* support the ALJ's credibility determination.[5] However, under Ninth Circuit precedent the court may not affirm an ALJ's decision based on mere speculation as to the ALJ's specific reasons for his credibility finding. *See Bunnell*, 947 F.2d at 346. Thus, the court is constrained to remand this case for further findings with regard to the ALJ's reasons for rejecting Reyes' pain allegations, and for a statement of the specific evidence upon which the ALJ actually based his credibility finding.

**B.   The ALJ's Finding Regarding Reyes' Residual Functional Capacity Was Adequate**

The ALJ found that Reyes has the residual functional capacity to "perform work that allows her frequent access to a bathroom." He further found that Reyes' past relevant work as a data entry

---

[5] Among other things, there is an inconsistency in Reyes' original disability application regarding the reason she stopped working. In one place she states she stopped working on February 2, 2002 because she was laid off due to company down-sizing, while on another place on the same page she states she became unable to work on February 2, 2002 because of her condition. (*See* Tr. 53.) There is also no mention of any pain medications where one would expect in her application forms (*see* Tr. 58 & 75) despite her concurrent statements that she was "always in pain" and that her "pain . . . is more unbearable" (*see* Tr. 53 & 72). Reyes failed to show up for a consultative examination and failed to respond to due process letters (Tr. 174), which alone would be sufficient grounds for denying benefits if Reyes did not have a good reason. *See* 20 C.F.R. § 416.918. The ALJ states that Reyes did not go to the exam because she did not want to be examined by an unfamiliar doctor. If that were considered a sufficient reason to refuse a consultative examination, the requirements of Section 416.918 would be eviscerated. While any one of these facts alone might not be sufficient grounds for discounting the credibility of Reyes' testimony regarding her pain, taken together they could be sufficient *if* that was the basis of the ALJ's credibility determination. However, the adequacy of the ALJ's credibility finding will depend on what his actual reasons were.

clerk "did not require the performance of work-related activities precluded by her residual functional capacity." The foregoing, taken along with the ALJ's description of Reyes' frequent need to leave her workstation to use the restroom at her prior job, adequately describes Reyes' work-related limitations and her residual functional capacity.

Reyes concedes that she was incontinent for several years before she was laid off, that she had "no control" over it, and that she had to leave her work station every half hour to go to the restroom.[6] While she testified that she is having more bouts of incontinence since she stopped working, she did not say how many more. And when asked at the hearing what reasons she would give as to why she can't go back to work now, she referenced only pain, and not her frequent need to use a restroom.

There is substantial evidence in the record to support the ALJ's finding that Reyes has the residual functional capacity to perform work that allows her frequent access to a bathroom. The symptoms and limitations Reyes claims render her unable to do so are the same symptoms and limitations she had for over a year while working. It was Reyes' burden to show: 1) that her symptoms and limitations worsened so much that they became disabling; 2) when they reached that degree of severity; and 3) that her condition had been, or could be expected to continue to be, disabling for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *see also, Taylor*, 576 F.Supp. at 1177. Reyes' vague and conclusory testimony that she is having "more" bouts of incontinence was insufficient to meet that burden.

Reyes makes much of the fact that, ordinarily, a claimant's residual functional capacity is the claimant's remaining ability to do sustained work activities on a "regular and continuous basis" of 8 hours a day 5 days a week, or an equivalent work schedule, citing Social Security Ruling 96-8p. However, that requirement is modified in Footnote 2 to Ruling 96-8p, which states:

> "The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled."

---

[6] Her actual testimony was "I had to go every half-hour, every hour."

In the present case, Reyes' past relevant work allowed her to take frequent breaks to attend to her incontinence. To that extent, the "8 hours 5 days a week" requirement does not apply here.

Reyes also mentions that Dr. Wherry signed a note stating Reyes had frequent urination and he did not feel she was capable of serving on a jury at that time. Reyes makes no showing that the requirements of serving on a jury are comparable to sedentary work that allows frequent access to a bathroom. On the contrary, courts generally do not take breaks every half hour or hour during jury trials. Thus, Reyes' inability to serve on a jury is fully consistent with a residual functional capacity to do sedentary work with allows frequent access to a bathroom.

Assuming that upon remand the ALJ adequately articulates his reasons for finding Reyes' testimony regarding pain not credible, the ALJ's finding regarding Reyes' residual functional capacity is supported by substantial evidence in the record and is free of legal error.

### C. The ALJ Adequately Compared the Demands of Reyes' Past Work with Her Residual Functional Capacity

#### 1. *The ALJ properly found that Reyes' past work was sedentary work*

Where the physical and mental demands of a plaintiff's past work can be deduced from the record, an ALJ need not enumerate such demands. *See, Dealmeida v. Secretary of HHS*, 699 F.Supp. 806, 807 (N.D. Cal. 1988). Here, there is ample information in the record regarding the nature of Reyes' past work (*see* Tr. 65-72), and the ALJ expressly cited to the most relevant page of the record (*see* Tr. 16, citing "Exhibit 1E, p.3" at Tr. 54 (Disability Report Adult, signed by Reyes on March 16, 2003, at page 3)). On that page, Reyes described her work as an "Administrative Clerk Inventory Control." She stated that her duties included data entry, heavy phone, filing, dispatching, work load and inventory control. She indicated she sat for 6 hours per day, walked for a total of 1 hour per day, stood for a total of ½ hour per day, handled objects for a total of ½ hour per day and reached for a total of ½ per day. She stated that she carried boxes of IC's from the warehouse 30 feet to her desk once or twice a week, and indicated that both the heaviest weight she lifted and the weight frequently lifted was less than 10 pounds. She also indicated she was a lead worker who supervised 3 people.

The regulations describe sedentary work as follows:

"(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567

Based on the description of Reyes' past work and the definition of sedentary work, the ALJ properly found that Reyes' past work was sedentary.

### 2. *The ALJ properly matched Reyes' residual functional capacity to her past work*

In his evaluation of the evidence, the ALJ discussed Reyes' prior sedentary work, and the disruption she experienced due to her incontinence while working. (*See* Tr. 15.)  Based on the evidence in the record of Reyes' incontinence and frequent trips to the restroom while working, the ALJ properly found that Reyes' past work "did not require her to exceed the above-noted residual functional capacity." (*See* Tr. 15.)  In other words, Reyes' past work allowed her frequent access to a bathroom, and that is the only limitation the ALJ found as to Reyes' ability to do sedentary work.

In her motion for summary judgment, Reyes notes that an "[i]nability to perform jobs requiring bilateral manual dexterity significantly compromises the sedentary occupational base." However, there is no evidence in the record that would support a finding that Reyes had any disabling impairment of her bilateral manual dexterity that lasted, or could be expected to last, for a continuous period of not less than 12 months.  And at the hearing before the ALJ, Reyes did not testify regarding any impairment of her bilateral manual dexterity.[7]

Assuming that upon remand the ALJ adequately articulates his reasons for finding Reyes' testimony regarding pain not credible, the ALJ's finding comparing the demands of Reyes' past work with her residual functional capacity is supported by substantial evidence in the record and is free of legal error.

### IV. CONCLUSION

The ALJ failed to specifically identify what evidence he found undermined Reyes' allegations

---

[7] Reyes did mention difficulty lifting her arms in the shower to wash her hair due to joint pain, but she did not offer any testimony that her joint pain in any way interfered with her doing sedentary work.

of disabling pain, and thus this case must be remanded for further findings.  Assuming that upon remand the ALJ adequately articulates his reasons for finding Reyes' testimony regarding pain not credible, the ALJ's decision is otherwise supported by substantial evidence and free of legal error.

Dated: *2/13/07*

PATRICIA V. TRUMBULL
United States Magistrate Judge